COVEY v. UNITED STATES.

(District Court, N. D. Iowa, W. D.   February 24, 1920.)

No. 271.

1. PLEADING ⬭⟿8(7), 22—ALLEGATIONS AS TO RIGHT TO RECOVER WAR RISK INSURANCE NOT CONCLUSION, OR IMMATERIAL, OR IRRELEVANT.

In an action on a policy issued by the Bureau of War Risk Insurance, an allegation that by the terms and conditions of the policy plaintiff was, and had been since a specified date, entitled to the sum of $10,000 as set out in such policy, was not a conclusion, in connection with other allegations as to his enlistment, entry into the service, application, and obtaining of insurance, that he served in the army, was wounded, honorably discharged, and applied to the Bureau of War Risk Insurance for payment, nor were they immaterial or irrelevant.

2. PLEADING ⬭⟿364(1)—ALLEGATIONS NOT SUBJECT TO BE STRICKEN AS IMMATERIAL, IRRELEVANT, OR REDUNDANT.

In an action on a policy issued by the Bureau of War Risk Insurance, allegations as to letters, addressed to the bureau, requesting payment and demanding information enabling plaintiff to prove his claim, and as to his failure to receive any answer, were not subject to be stricken as immaterial, irrelevant, and redundant.

3. PLEADING ⬭⟿364(1)—ALLEGATIONS SUBJECT TO MOTION TO STRIKE AS IMMATERIAL, IRRELEVANT, AND REDUNDANT.

In an action on a policy issued by the Bureau of War Risk Insurance, allegations as to requests for information from plaintiff's superior officers as to the method of collecting his claim, and as to their failure to furnish such information, and as to the necessity of employing an attorney contrary to the statement on the policy, and as to the policy and intent of the agents and officers of the United States, in the army and in the Bureau of War Risk Insurance, respecting claims on policies, *held* subject to be stricken as immaterial, irrelevant, and redundant.

⬭⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4.** PLEADING ⟨⟩367(3)—ALLEGATIONS ON WAR RISK POLICY SUBJECT TO MOTION TO MAKE MORE SPECIFIC.

In an action on a war risk insurance policy, plaintiff will be required to make more specific his allegations as to the neglect, failure, and refusal of the Bureau of War Risk Insurance to make payment or settlement, and that the bureau and the United States, through the director and its officers and agents in such bureau and in the army, had notice of plaintiff's rights, by alleging, so far as known to him, the names of the officers and agents referred to, and the particulars of the director's neglect, failure, and refusal to make settlement.

**5.** UNITED STATES ⟨⟩125—MAY BE SUED ONLY WITH CONSENT OF CONGRESS.

The United States may not be sued in their own courts without the consent of Congress.

**6.** UNITED STATES ⟨⟩127—ACTION ON WAR RISK POLICIES MAY BE BROUGHT ONLY IN EVENT OF DISAGREEMENT WITH BUREAU OF WAR RISK INSURANCE.

Under War Risk Insurance Act, § 5, as amended by Act May 20, 1918, 40 Stat. 556, and Act July 11, 1918 (Comp. St. Ann. Supp. 1919, §§ 514e, 514kk), an action on a claim may be brought against the United States in the District Court, in admiralty or otherwise, only in the event of a disagreement as to the claim or its amount between the claimant and the Bureau of War Risk Insurance.

**7.** UNITED STATES ⟨⟩125—ACTION ON WAR RISK POLICY IS CONSENTED TO, WHEN BROUGHT BECAUSE OF DISAGREEMENT WITH BUREAU OF WAR RISK INSURANCE.

An action on a policy under War Risk Insurance Act, § 5, as amended by Act May 20, 1918, 40 Stat. 556, and Act July 11, 1918 (Comp. St. Ann. Supp. 1919, §§ 514e, 514kk), is brought with the consent of the Bureau of War Risk Insurance, when brought because of disagreement with such bureau as to the claim or its amount.

**8.** UNITED STATES ⟨⟩131—JURISDICTION OF ACTION ON WAR RISK POLICY DEPENDS ON POLICY AND CIRCUMSTANCES OF INJURY.

Though War Risk Insurance Act, § 5, as amended by Act May 20, 1918, 40 Stat. 556, and Act July 11, 1918 (Comp. St. Ann. Supp. 1919, §§ 514e, 514kk), provides that, in the event of disagreement as to a claim for losses or the amount thereof, an action may be brought against the United States in the District Court sitting in admiralty, the jurisdiction of the District Court sitting in admiralty depends on the contract or policy issued and the circumstances or manner in which the claimant was injured.

At Law. Action by Leo L. Covey against the United States. On defendant's motion to strike parts of count 1 of the petition, and on demurrer to count 2. Motion sustained in part and overruled in part, and demurrer sustained.

The allegations sought to be stricken by paragraphs 2, 3, and 4 of the motion were those commencing with the words "That on the 24th day of May, 1919, plaintiff made claim," and ending with the words "that he has never received any answer to either of said letters."

The allegations sought to be stricken by paragraphs 5, 6, 7, and 8 of the motion were those commencing with the words "That he orally requested information from his superior officers," and ending with the words "if allowed to continue would undermine fixed government and the Constitution of the United States."

Paragraph 9 sought to require plaintiff to make more specific the allegations as to the neglect, failure, and refusal of the Director of the Bureau of War Risk Insurance to make payment or settlement, and as to notice, by naming the officers and agents in such bureau and in the United States army referred to therein, and by setting out wherein the director had neglected, failed,

and refused to make payment or settlement, and wherein he had neglected and failed to comply with the statute.

William Mulvaney, of Cherokee, Iowa, T. P. Cleary, of Sioux City, Iowa, and Grenville P. North, of Cherokee, Iowa, for plaintiff.

F. A. O'Connor, U. S. Atty., of Dubuque, Iowa, and Seth Thomas, Asst. U. S. Atty., of Ft. Dodge, Iowa.

REED, District Judge. The plaintiff, Leo L. Covey, filed in this court on July 8, 1919, his petition in two counts against the United States of America, as defendant, as follows:

### Count One.

That the plaintiff is a resident of Cherokee, Cherokee county, Iowa.

That the defendant, the United States of America, is a sovereign power and nation, and that by an act amending an act of Congress entitled "An act to authorize the establishment of a Bureau of War Risk Insurance in the Treasury Department," approved by the President of said sovereign power, the United States of America, on October 6, 1917, the defendant granted permission to bring suit against the United States of America in the District Court of the United States in and for the district in which plaintiff is a resident for and on account of the things hereinafter stated.

That on the 21st day of March, A. D. 1918, the plaintiff enlisted in the United States Army and served therein until honorably discharged therefrom on account of wounds received at Chateau Thierry, France, while engaged in battle against the Imperial German government.

That the plaintiff was discharged from the United States Army on June 5, 1919, and a copy of said discharge is hereto attached and made a part hereof as fully and completely as if set out herein, and marked "Exhibit A."

That on the 5th day of April, 1918, pursuant to the terms of the before mentioned act of Congress, the plaintiff applied for insurance against death or permanent total disability as contemplated in said act, in the sum of ten thousand dollars, and was issued a policy of insurance, a copy of which is hereto attached, marked "Exhibit B," and made a part hereof as fully and completely as if set out herein.

That by the terms and conditions of said contract or policy of insurance the plaintiff is, and has been since the 1st day of August, 1918, entitled to the sum of ten thousand dollars as set out in said policy of insurance.

That on the 24th day of May, 1919, plaintiff made claim for said sum under the terms of said policy by addressing a letter to the Bureau of War Risk Insurance, Washington, D. C., said letter stating the conditions and requesting payment.

That again on the 7th day of June, 1919, after being discharged from the United States Army, the plaintiff mailed another letter to the Bureau of War Risk Insurance, demanding that he be furnished with information, so as to enable him to prove his claim under said policy and collect the amount due.

That he has never received any answer to either of said letters, and has never received any payment under policy, or any other payment on account of said total permanent disability, from the United States of America or any other person or corporation.

That he orally requested information from his superior officers at the United States General Hospital No. 26, at Ft. Des Moines, Iowa, as to the method of collecting his claim and as to the amount he was to be allowed. That said officers and agents of the United States of America furnished him no information relative thereto, except an oral statement that plaintiff would be allowed 20 per cent. permanent disability.

That, contrary to the important notice printed on the back of said policy of insurance, reading as follows: "It will not be necessary to employ an attorney, claim agent, or other person to secure benefits under this certificate"—it is nec-

essary to employ an attorney to collect said sum, and your plaintiff has agreed to pay his attorney the sum of one thousand dollars therefor, or 10 per cent. of the amount recovered.

Further, your plaintiff is informed and believes it is the policy and intent of said agents and officers of the United States of America, both in the United States Army and in the Bureau of War Risk Insurance, to delay payment on insurance policies so issued, and it is further their policy and intent to construe all cases as not to be permanent total disability, as the plaintiff knows of no person who has been allowed permanent total disability, but admits that there have been a few such cases.

But your plaintiff is informed and believes it is rather their purpose and intent to force said persons to accept alms from charitable organizations, such as the Red Cross, or to re-enlist in the United States Army, in order to get any benefits from said policies of insurance. That all of said policies and intentions are in direct contravention of said act of Congress, and if continued will deprive all wounded soldiers, sailors, and marines from deriving their just benefits under said act. That said act was passed for the purpose of furnishing a just compensation to the soldier, sailor, or marine who received injuries or was disabled in the service of the United States, and to prevent him from becoming an object of bounty of charitable organizations. That your plaintiff is informed and believes that the aforesaid notice printed on the back of said policy of insurance is for the purpose of lulling the beneficiary into passive acquiescence in the foregoing unlawful policies and intentions, and to prevent the collection of just claims against the United States under said policies of insurance, and in contravention to the policies and desires of a just and thankful government, Congress, and people. That said notice heretofore referred to is false, and the publication of the same on the back of said policy of insurance is unlawful and against public policy, and if allowed to continue would undermine fixed government and the Constitution of the United States.

That plaintiff, Leo L. Covey, was wounded by shrapnel in battle at Chateau Thierry, France, during the month of July, 1918, and sustained injuries therefrom that permanently and totally disabled him, as contemplated in the aforesaid act of Congress and said contract or policy of insurance, and is entitled to the benefits of said policy from and after August 1, 1918.

That plaintiff has paid the sum of sixty-four dollars premium on said policy of insurance after said injury occurred, the same being deducted from his pay while in the United States Army, which said sum is now owed him by the United States of America under the terms of said policy of insurance and said act of Congress.

That during all of the time of the life of said policy of insurance the plaintiff paid promptly premiums on said policy, the same being deducted from his pay in the United States army, and plaintiff has performed all of the conditions of said contract or policy of insurance necessary to enable him to recover thereon.

And that said Director of the Bureau of War Risk Insurance has neglected and failed and refused to make any payment or settlement under said policy, and has neglected and failed to comply with said act and the terms thereof, although he has had actual notice of plaintiff's rights, and the United States of America has actual notice of plaintiff's rights, through said director and through its officers and agents in the Bureau of War Risk Insurance and in the United States Army.

Wherefore plaintiff, Leo L. Covey, demands judgment against the United States of America, on this the first count of his petition, in the sum of eleven thousand and seventy dollars and forty cents, and for costs.

### Count Two.

For a second, further, separate, and distinct cause of action against the defendant, the plaintiff makes all of count one of this petition a part of this count as fully and completely as if set out herein, in so far as the same is applicable, and further states:

That on the 6th day of October, 1917, the President of the United States of America approved the act heretofore referred to in count one and the same became a law.

That among other things said act was an offer by the United States of America to insure any person entering the military service of the United States of America against partial or total disability or permanent total or partial disability on account of sickness, disease, or wounds received in the line of duty and not through any misconduct on the part of the insured; the United States agreeing to pay said premiums as a part of the compensation of said person for enlisting or entering the military or naval service of the United States of America and as a part of the compensation for such service.

That on March 21, 1918, about six months after the passage and approval of said act of Congress, the plaintiff enlisted and served in the United States army until honorably discharged therefrom on June 5, 1919, and complied with all the other terms and conditions of said act or offer. That from the time of his so enlisting until wounded a contract of insurance was in full force and effect by and between the United States of America and this plaintiff, entirely separate and apart from the written policy heretofore referred to in count one of this petition, and insuring the plaintiff against partial or total disability incurred in the line of duty and not through any misconduct on the part of the plaintiff.

That under the terms of said act and said contract of insurance the plaintiff is entitled to receive for a permanent total disability the sum of thirty dollars per month for the balance of his life after being discharged from the United States Army, and to receive said amount independent of any other policy of insurance, in writing or otherwise, for which he paid an additional premium.

That the natural expectancy of the plaintiff is about thirty years from June 5, 1919, and he is therefore entitled to the sum of ten thousand eight hundred dollars to be paid to him under the terms and conditions of said contract of insurance.

That his condition is resultant through no misconduct of his own, but is the result of wounds received in battle as hereinbefore set out in count one hereof.

That he has furnished notice to the Bureau of War Risk Insurance as provided in said act and pursuant to the terms of said contract, by mailing letters to said bureau, and by applying to officers in the army of the United States of America.

That the United States of America and the Bureau of War Risk Insurance have actual notice of his condition and injury and have failed and neglected and refused to make any payments or settlement under said contract of insurance, even although huge sums have been appropriated by the Congress of the United States to pay said claims and to enable said Bureau of War Risk Insurance to provide itself with clerical, legal, and other assistance necessary to expedite the settlement of said claims. That it has been nearly twelve months since said injury, but your plaintiff has never received any communication of any kind or nature from said Bureau of War Risk Insurance. That said Bureau of War Risk Insurance has access to the records of the War and Navy Departments and the assistance of the Medical Corps of the Army and Navy, and it is the duty of all of said organizations, and it was their duty, to ascertain the extent of the plaintiff's injuries and to have the same ascertained before the discharge of the plaintiff from the United States Army, and to have begun payments when the plaintiff ceased to draw pay from the United States Army.

That it has been necessary for the plaintiff to secure the services of an attorney to collect his claim, and he has agreed to pay him therefor the sum of one thousand and eighty dollars, or 10 per cent. of the amount recovered, all of which sum the plaintiff is entitled to recover as a part of a judgment against the defendant pursuant to the terms of said act, and the same is far less than the reasonable value of said services.

That plaintiff desires nothing under either count of this petition by way of

charity, but if he is not entitled to said claims as a matter of right under existing law then he wants this petition dismissed.

Wherefore plaintiff demands judgment against the defendant on this the second count of his petition in the sum of eleven thousand and eight hundred and eighty dollars, and for costs, and demands judgment on both counts of his petition in the aggregate sum of twenty-two thousand nine hundred and fifty dollars and forty cents, together with the costs of this action.

[Signed]   G. P. North,

Attorney for the Plaintiff.

Which petition is subscribed and sworn to by the plaintiff. The discharge and enlistment record is set out as Exhibit A. Exhibit B reads as follows:

The United States of America, Treasury Department, Bureau of War Risk Insurance, Washington, D. C.

Certificate No. 2051053.

Date Insurance Effective, April 3, 1918.

This certifies that Leo Covey has applied for insurance on the amount of $10,000, payable in case of death or total permanent disability in monthly installments of $57.50.

Subject to the payment of the premiums required, this insurance is granted under the authority of an act amending "An act entitled 'An act to authorize the establishment of a Bureau of War Risk Insurance in the Treasury Department,' approved September 2, 1914, and for other purposes," approved October 6, 1917, and subject in all respects to the provisions of such act, of any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted, all of which, together with the application for this insurance, and the terms and conditions published under authority of the act, shall constitute the contract.                     W. G. McAdoo, Secretary of the Treasury.

William C. De Lanoy,

Director of the Bureau of War Risk Insurance.

Countersigned at Washington, D. C.                     M. Deneen, Registrar.

Form 711.

Important Notice.

The insured may change the beneficiary without the consent of such beneficiary. This insurance is not assignable and is not subject to the claims of creditors of the insured or of the beneficiaries.

Should a claim arise under this certificate, you are requested to write direct to the Bureau of War Risk Insurance, Treasury Department, Washington, D. C., in order to secure a prompt settlement. There will be no expense in connection with proving a claim and collecting the amount due, other than small fees to notaries. It will not be necessary to consult or employ an attorney, claim agent, or other person to secure benefits under this certificate.

The plaintiff claims of the defendants upon both counts of the petition the aggregate sum of $22,950 and some cents, together with costs of the action, but upon what theory the claim of $11,000 and over upon each count is made is not clear.

[1] The defendants have filed a motion to strike out parts of count 1 of the petition, paragraph 1 of which motion reads:

"That by the terms and conditions of said contract or policy of insurance the plaintiff is, and has been since the first day of August, 1918, entitled to the sum of ten thousand dollars as set out in said policy of insurance"

—for the reason that the same is a conclusion of the pleader, incompetent, and irrelevant. Standing alone, the part thus assailed might be a conclusion; but in connection with the other allegations of count

1 of the petition, viz. "that the plaintiff enlisted in the United States Army, was accepted and entered the service, made application to the Bureau of War Risk Insurance, and was granted a policy of insurance (a copy of which is set out); that he served in the army, was wounded, honorably discharged, and made application to the Bureau of War Risk Insurance for payment of such policy"—it can hardly be said that such allegations are immaterial or irrelevant, and said paragraph 1 of the motion to strike will be and is overruled.

[2] Defendants also move to strike certain parts of the petition described in paragraphs 2, 3, and 4 of their said motion, because immaterial, irrelevant, and redundant, which said grounds are each overruled, for the same reason that paragraph 1 of the motion is overruled.

[3] Paragraphs 5, 6, 7, and 8 of defendants' motion to strike are each sustained upon the ground that each of the parts of the petition thus assailed is wholly immaterial, irrelevant, and redundant, and such parts of the pleading will be and are stricken therefrom.

[4] By paragraph 9 of their motion the defendants ask that plaintiff be required to make more specific the allegations of the petition therein quoted, which paragraph is sustained, and plaintiff required to comply with such paragraph, so far as known to the plaintiff.

Said motion is therefore overruled in part and sustained in part.

Counsel for the defendants have also filed a demurrer to count 2 of the petition upon the following grounds: (1) The plaintiff does not have capacity under the laws of the United States to bring said cause of action in this court. (2) This court is without jurisdiction, under the laws of the United States, to hear and determine the cause of action alleged and set forth in count 2 of the petition.

By this demurrer the defendants challenge the right of the plaintiff to maintain this action upon count 2 of the petition upon the grounds: (1) That plaintiff has not capacity to maintain this action; and (2) that the court is without jurisdiction to determine this controversy. Just what the plaintiff's want of capacity to maintain this suit is, is not clear, unless it be that the plaintiff's citizenship is not alleged, which it is not.

By the alleged want of jurisdiction to determine this controversy it may be that it is because it is not alleged that the Congress has consented to this suit being brought against the United States. Of these in their order:

1. If the alleged want of capacity is a failure to show the plaintiff's citizenship, that may be amended.

[5] 2. It is true that the United States may not be sued in their own courts without the consent of Congress. Hill v. United States, 149 U. S. 593, 598, 599, 13 Sup. Ct. 1011, 37 L. Ed. 862; Schillinger v. United States, 155 U. S. 163, 15 Sup. Ct. 85, 39 L. Ed. 108; Bigby v. United States, 188 U. S. 400, 23 Sup. Ct. 468, 47 L. Ed. 519, and cases there cited.

By the Judiciary Act of September 24, 1789 (1 Stat. c. 20, § 9, pp. 73, 77), Congress conferred upon "the District Courts of the United States * * * exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction * * * saving to suitors, in

all cases, the right of a common law remedy, where the common law is competent to give it, * * * " as authorized by section 2 of article 3 of the Constitution of the United States, and this grant has been continued in all subsequent acts of Congress to and including section 24 (3) of the Judicial Code (36 Stat. 1091 [Comp. St. § 991]). See note to section 256 of the Judicial Code, pp. 131, 132.

By the Act of Congress approved September 2, 1914 (38 Stat. c. 293, p. 711 [Comp. St. §§ 514a–514j]), there was established in the Treasury Department of the United States a bureau, to be known as the Bureau of War Risk Insurance, subject to the general direction of the Secretary of the Treasury. The reason for the establishment of such Bureau is stated in the preamble to the act as follows:

"Whereas, the foreign commerce of the United States is now greatly impeded and endangered through the absence of adequate facilities for the insurance of American vessels and their cargoes against the risks of war; and

"Whereas, it is deemed necessary and expedient that the United States shall temporarily provide for the export shipping trade of the United States adequate facilities for the insurance of its commerce against the risks of war."

That such insurance would be within the admiralty and maritime jurisdiction of the United States can hardly be doubted. Insurance Co. v. Dunham, 11 Wall. 1, 21 (20 L. Ed. 90).

By the Act of Congress approved October 6, 1917 (40 Stat. c. 105, p. 398), the said Act of September 2, 1914, was further amended by section 1 of article 1 as follows:

"That there be in such bureau a Division of Marine and Seamen's Insurance and a Division of Military and Naval Insurance * * * and a Commissioner of Military and Naval Insurance, respectively. * * *

"Sec. 2. That such Act of September 2, 1914, as amended, is hereby further amended by adding new sections, as follows;

"'Sec. 12. That sections 2 to 7 inclusive, and section 9, shall be construed to refer only to the Division of Marine and Seamen's Insurance.

"'Sec. 13. That the director, subject to the general direction of the Secretary of the Treasury, shall administer, execute, and enforce the provisions of this act, and for that purpose have full power and authority to make rules and regulations, not inconsistent with the provisions of this act, necessary or appropriate to carry out its purposes, and shall decide all questions arising under the act, except as otherwise provided in sections 5 and 405 * * *"
(Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 514a, 514k, 514kk)

—which rules and regulations, when made, have the force of law. United States v. Birdsall, 233 U. S. 223, 231, 34 Sup. Ct. 512, 58 L. Ed. 930; United States v. Grimaud, 220 U. S. 506, 517–523, 31 Sup. Ct. 480, 55 L. Ed. 563.

The War Risk Insurance Act (of September 2, 1914) was further amended by the Act of Congress approved July 11, 1918 (40 Stat. c. 145, p. 898), section 5 (Comp. St. Ann. Supp. 1919, § 514e) of which, as so amended, reads in this way:

"Sec. 5. That the Secretary of the Treasury is authorized to establish an advisory board, to consist of three members skilled in the practices of war risk insurance, for the purpose of assisting the bureau * * * in fixing rates of premium and in adjustment of claims for losses, and generally in carrying out the purposes of this act. · * * * He is likewise authorized to appoint two persons skilled in the practice of accident insurance for the purpose of assisting the bureau * * * in the adjustment of claims for death,

personal injury, or detention; * * * in the event of the disagreement as to the claim for losses, or amount thereof, between the * * * bureau and the parties to such contract of insurance, an action on the claim may be brought against the United States in the District Court of the United States, *sitting in admiralty* in the district in which the claimant or his agents may reside. The Secretary of the Treasury is, in his judgment, authorized to compromise the claim either before or after the institution of an action thereon."

40 Stat. c. 105, the Act of October 6, 1917, § 400, p. 409 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514u), under article IV, entitled "Insurance," provides:

"That in order to give every commissioned officer and enlisted man and to every member of the Army Nurse Corps * * * when employed in active service under the War or Navy Departments greater protection for themselves and their dependents than is provided in article III, the United States, upon application to the bureau, and without medical examination, shall grant insurance against the death or total permanent disability of any such person in any multiple of $500, and not less than $1,000, * * * upon the payment of the premiums as hereinafter provided."

Other sections provide the terms upon which such insurance may be procured by every such person, and how the insurance shall be adjusted and paid by the Bureau of War Risk Insurance in case of death or permanent disability occurring while in the line of duty. Section 405, p. 410 (see Comp. St. Ann. Supp. 1919, § 514vvv), provides:

"That in the event of disagreement as to a claim under the contract of insurance between the bureau and any beneficiary * * * thereunder, an action on the claim may be brought against the United States in the District Court of the United States in and for the district in which such beneficiaries or any one of them resides. The court, as part of its judgment, shall determine and allow such reasonable attorney's fees," etc.

By section 5 of the War Risk Insurance Act as originally enacted it is provided that:

"In the event of disagreement as to the claim for losses, or amount thereof, between the said bureau and the parties to such contract, * * * an action on the claim may be brought against the United States in the District Court of the United States, *sitting in admiralty*, in the district in which the claimant or his agent may reside." 38 Stat. c. 203, § 5, p. 712.

As amended by the Act of May 20, 1918, 40 Stat. 556, section 405, containing the words "sitting in admiralty," is omitted therefrom; but by the act approved July 11, 1918 (40 Stat. c. 145, p. 898), the words omitted are restored to section 5, again providing:

"In the event of disagreement as to the claim for losses, or amount thereof, between the *' * * bureau and the parties to such contract, * * * an action on the claim may be brought against the United States in the District Court of the United States, *sitting in admiralty*, in the district in which the claimant or his agents may reside. The Secretary of the Treasury is, in his judgment, authorized to compromise the claim either before or after the institution of an action therein."

[6] It thus appears that the Director of the Bureau of War Risk Insurance, subject to the general direction of the Secretary of the

Treasury is empowered and directed to administer and enforce the provisions of the War Risk Insurance Act, and for that purpose is given full power and authority to establish the right to benefits, compensation, or insurance provided for in this act, the form of applications therefor, the method of making investigations and medical examinations, and all other things necessary or proper to a full and final determination of the rights of all claimants to compensation, the manner and form of the adjudications and awards, and it is only "in the event of disagreement as to the claim for losses, or amount thereof, between the said bureau and the parties to such contract or policy," that an action on the claim may be brought against the United States in the District Court, either in admiralty or otherwise, under the War Risk Insurance Act.

[7] In either event, the Bureau of War Risk Insurance has consented that the suit may be brought against the United States.

The petition is set out at length, that its full terms and import may be shown, but there is nothing therein to indicate the citizenship of the plaintiff, the nature or character of the injuries received by him in the battle where he was wounded, the extent of his disability, or that there is any disagreement between him and the Bureau of War Risk Insurance upon which he brings this suit. In the absence of such disagreement there is nothing for the court to determine, and the Bureau of War Risk Insurance is fully authorized and empowered to adjust the plaintiff's claim and award to him the amount it may find upon investigation to which he may be entitled under his policy of insurance.

[8] Whether or not this court *sitting in admiralty* would have jurisdiction of the plaintiff's suit may be doubted, but it would depend upon the contract or policy issued to him, and the circumstances or manner in which he was injured. The Plymouth, 3 Wall. 20, 18 L. Ed. 125, and cases cited; Atlantic Transport Co. v. Imbrovek, 234 U. S. 53, 58, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157, and cases cited; Southern Pacific Co. v. Jensen, 244 U. S. 206, and cases cited beginning at page 214, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900.

This action is not brought in admiralty, and the Bureau of War Risk Insurance is authorized to determine whether or not the plaintiff is entitled to recover upon the contract or policy of insurance and the amount thereof.

The plaintiff will therefore be permitted to amend his petition within 20 days after the filing of this opinion, if he shall so elect, by setting out his citizenship, even though it may not be necessary, the nature and character of his injuries, the extent of his disability, and whether or not there is any disagreement between him and the Bureau of War Risk Insurance as to his claim, and what such disagreement is, if any, that the court may determine whether or not the suit is one within its admiralty or maritime jurisdiction, or one in which the common law will afford him a complete remedy. The court will then determine whether or not the case shall be referred to the Bureau of War Risk

Insurance for final determination, or tried as one in which the common law will afford plaintiff a remedy.

After the filing of such amendment, if any is filed, the defendants may answer or otherwise plead to such amendment within 20 days, and the matter will then stand for determination upon the issues thus made.

It is ordered accordingly.