MAGRUDER et al. v. UNITED STATES.

District Court, D. Idaho, S. D. January 19, 1929.

No. 1392.

Hawley & Hawley, of Boise, Idaho, for plaintiffs.

H. E. Ray, U. S. Dist. Atty., of Boise, Idaho, and Ralph R. Breshears, Regional Atty., U. S. Veterans' Bureau, of Nampa, Idaho, for the United States.

CAVANAH, District Judge. The plaintiffs, who have brought this action upon a war risk insurance policy, aver in their complaint that Mildred M. Magruder, formerly Mildred Martha Overton, on November 13, 1917, entered the military service in the Army Nurse Corps of the United States, and while there she applied for and received, on January 9, 1919, a policy of war risk insurance in the sum of $10,000, payable in case of death or total permanent disability in monthly installments of $57.50. At the time she applied for the insurance, she designated her mother, Maria Obigal Overton, as her beneficiary, who thereafter died and by will bequeathed to her son, Winfield Scott Overton, all of her estate. Thereafter, on March 28, 1929, Winfield Scott Overton assigned all of his interest in and to the proceeds of the war risk insurance certificate to June Overton Magruder and Janeth Fordham Magruder, daughters of the insured. The father of the insured died in March, 1921.

On September 14, 1918, the insured, under orders, proceeded to France and reported for duty at the hospital, and remained with the American expeditionary forces until June 19, 1919, when she returned to the United States, and at which time she became disabled, having incurred disability as a result of her service, from which she never recov-

ered. After her return to the United States she was, on August 31, 1919, transferred from the status of an active nurse performing military duty to that of a patient receiving treatment in the United States army hospital at Staten Island, New York, and at which time she was entitled to 31 days of accrued leave, and was relieved from all active duty and sent to her home in Brooklyn, N. Y., to be discharged and relieved from active service, to take effect on October 1, 1919. At the expiration of the 31 days' accrued leave she filed a claim for compensation, on September 5, 1924, but neither she nor any one has ever received or collected any compensation from the United States. Her death occurred August 30, 1925, and at that time she was entitled to compensation remaining uncollected in a sufficient amount to purchase and apply on all premiums becoming due.

In response to the request of the Veterans' Bureau, the plaintiff Charles Magruder submitted evidence of his marriage to Mildred M. Magruder, and on May 10, 1927, the Bureau denied liability on the certificate, on the ground that the insured, on August 29, 1919, requested a discontinuance of her insurance, which constituted a cancellation thereof, and accordingly it lapsed and terminated from and after September 9, 1919, the date the monthly premium became due, and which was prior to the date of her discharge on October 1, 1919. At the time the insured requested a discontinuance of her insurance, on August 29, 1919, all premiums had been paid up to September 9, 1919.

The defendant interposed a demurrer, which presents for decision the principal question: Did the certificate or policy of insurance lapse and terminate in full from and after September 9, 1919, the date when the monthly premium became due, which was prior to the date of the discharge of the insured on October 1, 1919, or not until 31 days (the grace period) from the last day of the calendar month in which the premium became due? The plaintiff contends that the policy did not lapse until, and was in force on, November 1, 1919, and that there was due the insured, uncollected, more than enough compensation to pay the premiums.

The War Risk Insurance Act, granting the right to contract with the government for insurance, was amended on June 7, 1924, and it is therein provided:

"Where any person has, prior to June 7, 1924, allowed his insurance to lapse while suffering from a compensable disability for which compensation was not collected and dies or has died, or becomes or has become permanently and totally disabled and at the time of such death or permanent total disability was or is entitled to compensation remaining uncollected, then and in that event so much of his insurance as said uncollected compensation, computed in all cases at the rate provided by section 302 of the War Risk Insurance Act as amended December 24, 1919, chapter 16, Forty-First Statutes, page 371, would purchase if applied as premiums when due, shall not be considered as lapsed; and the United States Veterans' Bureau is authorized and directed to pay to said soldier, or his beneficiaries as the case may be the amount of said insurance less the unpaid premiums and interest thereon at 5 per centum per annum compounded annually in installments as provided by law." 38 USCA § 516.

▮ This amendatory act was intended to have a retrospective operation, as it provides in effect that where any person, prior to June 7, 1924, has canceled or allowed his insurance to lapse while suffering from a compensable disability, and was at the time of his death entitled to compensation uncollected, then so much of his insurance as the uncollected amount would purchase, if applied as premiums when due, shall not be considered canceled or lapsed. When the cancellation of the certificate of the insured took effect, on August 29, 1919, the provision of the above act revived and kept in force her insurance, as she had paid all premiums up to September 9, 1919, and had coming to her more than enough compensation to pay all premiums up to and beyond November 1, 1919.

The original act (38 Stat. 711), as amended, provides:

"Sec. 1. * * * That there be in such Bureau * * * a Division of Military and Naval Insurance in charge of a * * * Commissioner of Military and Naval Insurance. * * *

"Sec. 13. That the director, subject to the general direction of the Secretary of the Treasury, shall administer, execute, and enforce the provisions of this act, and for that purpose have full power and authority to make rules and regulations, not inconsistent with the provisions of this act, necessary or appropriate to carry out its purposes, and shall decide all questions arising under the act, except as otherwise provided in sections 5 and 405. * * *" 40 Stat. pp. 398, 399, c. 105.

▮ In pursuance of the authority thus granted, the Director of the Bureau of War Risk Insurance did make certain rules and regulations, which have the force of law, where they are not inconsistent with any pro-

vision of the Constitution or acts of Congress. United States v. Grimaud,'220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563; Covey v. United States (D. C.) 263 F. 768, 775. So, in arriving at a proper decision, this court may turn for assistance, not only to the policy of insurance, but also the application for insurance, and the acts of Congress and the regulations of the department. On September 29, 1919, there was adopted by the department regulations containing the following provisions:

"In the case of term insurance canceled or reduced, the term insurance, excepting that portion of the insurance which is converted, shall be deemed to be canceled or reduced, as the case may be, thirty-one days (the grace period) from the last day of the calendar month on which the unpaid premium was payable. * * *

"In every case where reinstatement, in whole or in part, of lapsed or canceled term insurance is desired, the insured shall file with the Bureau of War Risk Insurance through military channels a signed application therefor, and make tender of the premium for one month (included in the grace period) on the amount of term insurance to be reinstated, and also of the amount of one month's premium on the reinstated insurance for the month in which application for reinstatement is made.. * * *

"For the purpose of determining whether yearly renewable term insurance is or was in force, the grace period for the payment of premiums shall be computed so as to include thirty-one days from and after the last day of the calendar month on which, if the insured is in the service or if he had remained in the service, the unpaid premiums would have been payable. During such grace period the insurance shall remain in force but the unpaid premiums shall be deducted from any settlement under the insurance on account of any claims arising during such grace period."

Treasury Decisions 48 and 54, War Risk Insurance Bureau.

■ In effect, under these regulations, when the insured requests that his insurance be discontinued, and the request is accepted, the insurance does not lapse until 31 days from and after the last day of the calendar month in which a premium was payable, and during such grace period the insurance remains in force, but the unpaid premiums shall be deducted from any settlement under the insurance on account of any claims arising during such grace period. No good reason appears for a discrimination between the insured, who requests the discontinuance of his insurance, and one who does not make the request. The certificate of insurance clearly discloses the relation between the government and the insured, as it is there stated that the issuance of the certificate was "subject in all respects to the provisions of such act, or any amendment thereto, and of all regulations thereunder now in force or hereafter adopted, all of which, together with the application for this insurance, and the terms and conditions published under authority of the act, shall constitute the contract." The express words of the certificate and the regulations, as well as the amendatory act, show that it was intended to apply to insurance issued in the past. In the case of Baker v. United States (C. C. A.) 24 F.(2d) 766, we have a parallel case, as the Circuit Court of Appeals of the Fifth Circuit gave the same interpretation to the amendatory act and regulations as is given here.

The requests urged in the motion to strike and make more definite do not involve matters, if permitted to remain in the complaint, that are immaterial, or that the defendant cannot intelligently prepare its defense.

An order will be entered, overruling the demurrer and motions.