# BIGBY *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF NEW YORK.

No. 111.   Argued December 4, 5, 1902.—Decided February 23, 1903.

There is no contract, express or implied, which can be made the basis for jurisdiction by a United States Circuit Court under the act of Congress of March 3, 1887, known as the Tucker Act, between the United States and a person who, while properly in a government building, sustains injuries by the fall of an elevator belonging to the government and operated by one of its employés.   An action against the United States to recover damages for such injuries is necessarily one sounding in tort and is not maintainable in any court.

BIGBY, the plaintiff in error, claimed in his petition to have been damaged to the extent of ten thousand dollars on account of certain personal injuries received by him while entering an elevator placed by the United States in its court-house and post-office building in the city of Brooklyn, and asked judgment for that sum against the Government.

The petition was demurred to upon three grounds, namely, that the court had no jurisdiction of the person of the defendant, or of the subject of the action, and that the petition did not state facts sufficient to constitute a cause of action against the United States.

The demurrer was sustained by the Circuit Court on each of the grounds specified, and so far as it was sustained upon the ground that the petition did not state a cause of action, it was sustained because the action was not authorized by the act of Congress known as the Tucker Act, approved March 3, 1887, c. 359, and entitled "An act to provide for the bringing of suits against the Government of the United States."   24 Stat. 505.   The action was accordingly dismissed.   103 Fed. Rep. 597.

The specific allegations of the petition are—

That the United States is a corporation created by the Con-

stitution with its principal office in Washington, and within the meaning of the New York Code of Civil Procedure is a foreign corporation ;

That on or about November 27, 1899, the petitioner, while on his way to the office of the Marshal of the United States for the Eastern District of New York, and at the request of the United States and of its officers, employés and duly authorized agents, each acting within the scope of his authority, entered into a passenger elevator in the United States courthouse and post-office building in Brooklyn, which building and elevator was owned and controlled by the United States, and was designed and intended by it for the use of persons on their way to the office of its said Marshal ;

That the United States "then and there entered into an implied contract" with the petitioner, "wherein and whereby, for a sufficient valuable consideration, it agreed to carry your petitioner safely, to operate said elevator with due care, and to employ for the purposes of the operation of said elevator a competent and experienced person ;"

That in "violation of said contract, the United States failed to carry the petitioner safely, or to operate the elevator with due care, or to employ for the operation and to put in charge of such elevator a competent and experienced person, and violated its contract with the petitioner in other ways ; and,

That in consequence of said failures, respectively, the petitioner, "while entering the said elevator without negligence on his part was caused to fall and his foot, ankle and leg were crushed between said elevator and the top of the entrance into the elevator shaft or a projection in the shaft of said elevator or in some other manner and the back of your petitioner and other parts of the body of your petitioner were also consequently injured and your petitioner consequently suffered a laceration of the ligaments of his ankle and he consequently was caused much bodily and mental pain."

The transcript contains a certificate from the Circuit Court to the effect that in said cause the jurisdiction of that court was in issue, and that the question was " whether a person who is not, and has not been, an employé of the United States, can

sue the United States, in the Circuit Court of the United States, in the district where he resides, to recover damages to the amount of ten thousand dollars, which damages were caused by personal injury received by said person through the negligence of an employé of the United States, while said person injured as aforesaid, was being carried on an elevator in a public building, owned and used by the United States as a post-office and for other governmental uses and purposes, when said person entered said elevator for the purpose of visiting the office of the United States Marshal of such district on official business."

*Mr. Roger Foster* for plaintiff in error.

*Mr. Assistant Attorney General Pradt* for defendant in error.

MR. JUSTICE HARLAN, after making the foregoing statement, delivered the opinion of the court.

This being an action against the United States, the authority of the Circuit Court to take cognizance of it depends upon the construction of the above act of March 3, 1887. 24 Stat. 505.

By that act it is provided that the Court of Claims shall have jurisdiction to hear and determine "all claims founded upon the Constitution of the United States or any law of Congress, except for pensions, or upon any regulation of an Executive Department or upon any contract, expressed or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty if the United States were suable: *Provided, however,* That nothing in this section shall be construed as giving to either of the courts herein mentioned, jurisdiction to hear and determine claims growing out of the late civil war, and commonly known as 'war claims,' or to hear and determine other claims, which have heretofore been rejected, or reported on adversely by any

court, Department, or commission authorized to hear and determine the same." The act further provided that "the District Courts of the United States shall have concurrent jurisdiction with the Court of Claims as to all matters named in the preceding section where the amount of the claim does not exceed one thousand dollars, and the Circuit Courts of the United States shall have such concurrent jurisdiction in all cases where the amount of such claim exceeds one thousand dollars and does not exceed ten thousand dollars."

It is clear that the act excludes from judicial cognizance any claim against the United States for damages in a case "sounding in tort." But the contention of the plaintiff is, in substance that although the facts constituting the negligence of which he complains, made a case of tort, he may waive the tort; that his present claim is founded upon an implied contract with the Government, whereby it agreed to carry him safely in its elevator, to operate the elevator with due care, and to employ for the purposes of such carriage a competent and experienced person; and, consequently, that his suit is embraced by the words "upon any contract, express or implied, with the Government of the United States." The contention of the United States is that no such implied contract with the Government arose from the plaintiff's entering or attempting to enter and use the elevator in question, and that the claim is distinctly for damages in a case "sounding in tort," of which the act of Congress did not authorize the Circuit Court to take cognizance.

Can the plaintiff's cause of action be regarded as founded upon implied contract with the Government, within the meaning of the act of 1887?

The precise question thus presented has not been determined by this court. But former decisions may be consulted in order to ascertain whether this suit is embraced by the words, in that act, "upon any contract, express or implied, with the Government of the United States." Do those words include an action against the United States to recover damages for personal injuries caused by the negligent management of an elevator erected and maintained by it in one of its court-house and post-office buildings?

In *Gibbons* v. *United States*, 8 Wall. 269, 274—which was an action in the Court of Claims to recover an amount alleged to have been wrongfully exacted by a quartermaster of the United States in the execution of a contract for the delivery of oats—this court said : " But it is not to be disguised that this case is an attempt, under the assumption of an implied contract, to make the Government responsible for the unauthorized acts of its officer, those acts being in themselves torts. No government has ever held itself liable to individuals for the misfeasance, laches, or unauthorized exercise of power by its officers and agents. In the language of Judge Story, 'it does not undertake to guarantee to any person the fidelity of any of the officers or agents whom it employs, since that would involve it in all its operations in endless embarrassments, and difficulties, and losses, which would be subversive of the public interests.' . . . The language of the statutes which confer jurisdiction upon the Court of Claims, excludes by the strongest implication demands against the Government founded on torts. The general principle which we have already stated as applicable to all governments, forbids, on a policy imposed by necessity, that they should hold themselves liable for unauthorized wrongs inflicted by their officers on the citizen, though occurring while engaged in the discharge of official duties. . . . These reflections admonish us to be cautious that we do not permit the decisions of this court to become authority for the righting, in the Court of Claims, of all wrongs done to individuals by the officers of the General Government, though they may have been committed while serving that Government, and in the belief that it was for its interest. In such cases, where it is proper for the Nation to furnish a remedy, Congress has wisely reserved the matter for its own determination. It certainly has not conferred it on the Court of Claims."

The same general question arose in *Langford* v. *United States*, 101 U. S. 341, 342, 344, which was an action in the Court of Claims to recover for the use and occupation of lands and buildings, of which certain Indian agents acting for the United States had taken possession without the consent of the American Board of Foreign Missions, which had erected the buildings, and under

which Board the plaintiff claimed title. The United States asserted ownership of the property and disputed the title of the claimant. This court held that the action could not be maintained, and said that the reason for limiting suits to cases of express and implied contracts, as distinguished from cases formed on tort, " is very obvious on a moment's reflection. While Congress might be willing to subject the Government to the judicial enforcement of valid contracts, which could only be valid as against the United States when made by some officer of the Government acting under lawful authority, *with power vested in him to make such contracts*, or to do acts which implied them, the very essence of a tort is that it is an unlawful act, done in violation of the legal rights of some one. For such acts, however high the position of the officer or agent of the Government who did or commanded them, Congress did not intend to subject the Government to the results of a suit in that court. This policy is founded in wisdom, and is clearly expressed in the act defining the jurisdiction of the court; and it would ill become us to fritter away the distinction between actions *ex delicto* and actions *ex contractu*, which is well understood in our system of jurisprudence, and thereby subject the Government to payment of damages for all the wrongs committed by its officers or agents, under a mistaken zeal, or actuated by less worthy motives."

The subject was again considered in *Hill* v. *United States*, 149 U. S. 593, 598–9, which was an action to recover damages for the use and occupation of certain property in the possession of the United States, but of which the plaintiff asserted ownership. This court said: " The United States cannot be sued in their own courts without their consent, and have never permitted themselves to be sued in any court for torts committed in their name by their officers. Nor can the settled distinction, in this respect, between contract and tort, be evaded by framing the claim as upon an implied contract. *Gibbons* v. *United States*, 8 Wall. 269, 274; *Langford* v. *United States*, 101 U. S. 341, 346; *United States* v. *Jones*, 131 U. S. 1, above cited. An action in the nature of assumpsit for the use and occupation of real estate will never lie where there has been no relation of contract

between the parties, and where the possession has been acquired and maintained under a different or adverse title, or where it is tortious and makes the defendant a trespasser. *Lloyd* v. *Hough*, 1 How. 153, 159; *Carpenter* v. *United States*, 17 Wall. 489, 493. In *Langford* v. *United States*, it was accordingly adjudged that, when an officer of the United States took and held possession of land of a private citizen, under a claim that it belonged to the Government, the United States could not be charged upon an implied obligation to pay for its use and occupation."

In *Robertson* v. *Sichel*, 127 U. S. 507, 515, the court said: " The Government itself is not responsible for the misfeasances, or wrongs, or negligences, or omissions of duty of the subordinate officers or agents employed in the public service; for it does not undertake to guarantee to any person the fidelity of any of the officers or agents whom it employs; since that would involve it, in all its operations, in endless embarrassments, and difficulties, and losses, which would be subversive of the public interests." So in *German Bank of Memphis* v. *United States*, 148 U. S. 573, 579: " It is a well-settled rule of law that the Government is not liable for the nonfeasances or misfeasances or negligence of its officers, and that the only remedy to the injured party in such cases is by appeal to Congress."

In *Schillinger* v. *United States*, 155 U. S. 163, 168, the question was whether a suit could be maintained against the United States to recover damages for the use of a patent for an improvement in a concrete pavement. It appeared that the patent had been used by a contractor who undertook to construct a pavement for the United States. The pavement was constructed, and at the time the action was brought was in use by the Government. It was contended that the United States, having appropriated to public use property that belonged to the plaintiff, came under an implied obligation to compensate him—such implied obligation arising from the constitutional provision that private property should not be taken for public use except upon payment of just compensation. This view was rejected, and the court said: " Can it be that Congress intended that every wrongful arrest and detention of an individual, or

seizure of his property by an officer of the Government, should expose it to an action for damages in the Court of Claims? If any such breadth of jurisdiction was contemplated, language which had already been given a restrictive meaning would have been carefully avoided. . . . Here the claimants never authorized the use of the patent right by the Government; never consented to, but always protested against it, threatening to interfere by injunction or other proceedings to restrain such use. There was no act of Congress in terms directing, or even by implication suggesting, the use of the patent. No officer of the Government directed its use, and the contract which was executed by Cook did not name or describe it. There was no recognition by the Government or any of its officers of the fact that in the construction of the pavement there was any use of the patent, or that any appropriation was being made of claimant's property. The Government proceeded as though it were acting only in the management of its own property and the exercise of its own rights, and without any trespass upon the rights of the claimants. There was no point in the whole transaction from its commencement to its close where the minds of the parties met or where there was anything in the semblance of an agreement."

It thus appears that the court has steadily adhered to the general rule that, without its consent given in some act of Congress, the Government is not liable to be sued for the torts, misconduct, misfeasances or laches of its officers or employés. There is no reason to suppose that Congress has intended to change or modify that rule. On the contrary, such liability to suit is expressly excluded by the act of 1887.

Cases of this kind are to be distinguished from those in which private property was taken or used by the officers of the Government with the consent of the owner or under circumstances showing that the title or right of the owner was recognized or admitted. As, in *United States* v. *Russell*, 13 Wall. 623, 626, which was an action to recover for the use of certain steamers used in the business of the Government pursuant to an understanding with the owner that he should be compensated; or, in *United States* v. *Great Falls Manufacturing Company*, 112

U. S. 645, in which it appeared that certain private property was appropriated by officers of the Government for public use, pursuant to an act of Congress, the title of the owner being recognized or not disputed; or, in *United States* v. *Palmer*, 128 U. S. 262, 269, which was an action to recover for the use of a patent which the Government was invited by the patentee to use. In all such cases the law implies a meeting of the minds of the parties, and an agreement to pay for that which was used for the Government, no dispute existing as to the title to the property used. The important fact in each of those cases was that the officers who appropriated and used the property of others were authorized to do so, and hence the implied contract that the Government would pay for such use.

But, as we have seen, the plaintiff contends that when he entered or attempted to enter the elevator the Government must be deemed to have contracted that its employé in charge of it would use due care so as not to needlessly injure him. In other words—for it comes to that—by the mere construction and maintenance of such elevator the Government, contrary to its established policy, impliedly agreed to be responsible for the torts of an employé having charge of the elevator, if, by his negligence, injury came to one using it. We find no authority for this position in any act of Congress, and nothing short of an act of Congress can make the United States responsible for a personal injury done to the citizen by one of its employés who, while discharging his duties, fails to exercise such care and diligence as a proper regard to the rights of others required. "Causing harm by negligence is a tort." One of the definitions of a tort is "an act or omission causing harm which the person so acting or omitting did not intend to cause, but might and should with due diligence have foreseen and prevented." Pollock on Torts, 1, 19. The elevator in question was erected in order to facilitate the transaction of the public business, and also, it may be assumed, for the convenience and comfort of those who might choose to use it when going to a room in the court-house and post-office building occupied by public officers, and not pursuant to any agreement, express or implied, between the United States and the general public, or

under any agreement between the United States and the individual person who might seek to use it.    No one was compelled or required to use it, and no officer in charge of the building had any authority to say that a person using it could sue the Government if he was injured by reason of the want of due care on the part of the employé operating it.    No officer had authority to make an express contract to that effect and no contract of that kind could be implied merely from the Government's ownership of the elevator and from the negligence of its employé. The facts alleged show a case in which the plaintiff was injured by reason of the negligence of the manager of the elevator.    It is therefore a case of pure tort on the part of such manager for which he could be sued.    It is a case "sounding in tort," because it had its origin in and is founded on the wrongful and negligent act of the elevator manager.    There is in it no element of contract as between the plaintiff and the Government; for, as we have said, no one was authorized to put upon the Government a liability for damages arising from the wrongful, tortious act of its employé.    The plaintiff therefore cannot by the device of waiving the tort committed by the elevator operator make a case against the Government of implied contract.    A party may in some cases waive a tort, that is, he may forbear to sue in tort, and sue in contract, where the matter out of which his claim arises has in it the elements both of contract and tort.    But it has been well said that " a right of action in contract cannot be created by waiving a tort, and the duty to pay damages for a tort does not imply a promise to pay them, upon which assumpsit can be maintained."    *Cooper* v. *Cooper*, 147 Massachusetts, 370, 373.    If the plaintiff could sue the elevator employé upon an implied contract that due care should be observed by him in managing the elevator, it does not follow that he could sue the Government upon implied contract.    For under existing legislation no relation of contract could arise between the Government and those who chose to use its elevator.    It is easy to perceive how disastrous to the operations of the Government would be a rule under which it could be sued for torts committed by its agents and employés in the management of its property.    It is for Congress to determine in all such cases

what justice requires upon the part of the Government. If any exceptions ought to be made to the general rule it is for Congress to make them.

We have not overlooked the allegation in the petition that the plaintiff entered the elevator " at the request of the United States, and of its officers, employés and duly authorized agents, each acting within the scope of his authority." This, we assume, means at most only that the plaintiff entered, or attempted to enter, the elevator with the assent of those who had control of it and of the building in which it was erected. But if more than this was meant to be alleged ; if the plaintiff intended to allege an express or affirmative request by officers or agents of the United States, the case would not, in our view, be changed ; for the court knows that, without the authority of an act of Congress, no officer or agent of the United States could, in writing or verbally, make the Government liable to suit by reason of the want of due care on the part of those having charge of an elevator in a public building.

We are of opinion that this case is one sounding in tort, within the meaning of the act of 1887, and therefore not maintainable in any court.

The judgment of the Circuit Court dismissing the action for want of jurisdiction is

*Affirmed.*