Howry, J.,
delivered the opinion of the court:
The matter to be considered arises out of a demurrer to the petition.
It is alleged that a contract between plaintiff and the State of Wyoming was entered into for the construction of the principal canal described in the pleadings (and the lateral ditches thereto), which contract was subsequently changed on the application of the United States to the plaintiff whereby the General Government should have the right to enlarge and extend the canal and to occupy and use the *288 right of way acquired by the plaintiff from Wyoming. The object of the original contract with the State was the distribution of the necessary quantity of the waters of the North Platte Kiver for the irrigation and reclamation of a large body of arid land. The allegations of the petition are that permission had been properly obtained by plaintiff to divert the waters of the river mentioned and to that end plaintiff had obtained the necessary rights of way upon which to construct the canal. The contract made between plaintiff and the United States provided that the defendants should have the right to occupy and use the rights of way acquired by plaintiff to enlarge and extend the canal and its lateral subsidiaries. By way of consideration, the United States agreed to complete the enlargement and extension to a point named, in time for beneficial use during the irrigation season of the year A. D. 1906, and to carry in the enlarged and extended canal (and deliver the same to the plaintiff) all of the water claimed by the corporation under its permit, for use upon all of the land during the irrigation season of the year mentioned, and continuously thereafter. The contract between plaintiff and the United States was executed for the defendants by the Secretary of the Interior and was approved by the State of Wyoming. Further allegations disclose that plaintiff kept and performed all the provisions and conditions of the agreement, but that defendants, in disregard of the obligations of the contract and over plaintiff’s protest, neglected and refused to perform the things specified in their agreement. The alleged violation of the agreement is stated to be the refusal of defendants to deliver to the plaintiff any portion of the water for beneficial use during the irrigation season for the year 1906, and did not complete the enlargement and extension of the canal sufficiently for the delivery of any water to plaintiff during all or any sufficient portion of the irrigation season of the year 1907. Plaintiff further alleges that relying upon its contract with the Government the corporation sold unto persons settled and living upon the lands perpetual water rights for the use of about 16,200 acres of land, and that upon contracts for the sale of these lands there was an aggregate of deferred *289 payments due to plaintiff of $20,196.92 from the purchasers. The failure of defendants to deliver the water and keep their other covenants, it is further alleged, obliged plaintiff to extend the time, without interest, for the payment of certain deferred payments upon each and all of its water-rights contracts whereby damage ensued by the loss of interest due on these contracts.
The second principal count in the petition contains an allegation that plaintiff had sold for cash to the Rawhide Ranch Company paid-up perpetual water rights for water to be delivered from the canal for beneficial use and irrigation upon lands situate and lying under and in the vicinity of the main canal and subject to irrigation by the waters therefrom under the permit. The charge is that the ranch company, relying upon the conditions set forth in the plaintiff’s contract with the United States that water would be delivered to the ranch from the canal for beneficial use during the irrigation season of 1906, planted and cultivated a large body of land, but by reason of the failure of the Government to keep its promises there was a loss to the ranch company of several thousand dollars, which disabled it from paying to the plaintiff the sums agreed to be paid to the corporation for the use of the water, either by the corporation itself or by those with whom plaintiff dealt.
The amount demanded on this count aggregates $13,745.04 as losses sustained by the ranch company which plaintiff had to pay.
The claim was presented to the Secretary of the Interior, who in writing rejected the same upon the ground that the allegations of fact upon which the claims were based were not admitted by the officers of the Reclamation Service.
The demurrer sets forth generally that the petition does not allege facts sufficient to constitute a cause of action, but that the damages, if any, as claimed by plaintiff are consequestial and sound in tort. In further demurring to the specific items, the grounds stated by the defendants are that the items are respectively for anticipated profits, speculative in their nature and contingent and too remote from the contract to be recovered in this action for breach of the agreement.
*290 The contract of the defendants was made with full knowledge on the part of the United States of all of plaintiff’s rights covering the right to irrigate certain segregated lands and certain rights to the use of water from the river. Plaintiff was given the right to enlarge the principal canal partly constructed at the time of the execution of the agreement and to occupy and use the right of way for all purposes of maintaining and operating a canal and the right to extend the same over the right of way claimed by the plaintiff. The consideration for the transfer of the rights named in the contract appears to have been expressly stated that “ in consideration of the premises and for benefits as hereinafter specified, accruing to the party of the second part and the sum of one dollar to it in hand paid.” The other benefits accruing to plaintiff were stated to be that defendants should carry in the canal the waters claimed by plaintiff under its permit; that defendants would not make any agreement to deliver water on their own account by any land to be irrigated under the permit to divert water until the owner of such land should have contracted for water with plaintiff; and that the defendants complete the canal to the east line of the Carey Act lands in time for beneficial use during the irrigation season of 1906. Plaintiff agreed to guarantee the payment of 40 cents per acre per annum for a period of 10 years as a proportionate charge for the maintenance and operation of the canal; to make provision that all parties with whom contracts had been or would be made for water rights should bind themselves to pay all of the maintenance charges.
Defendants failed to deliver the water to which plaintiff was entitled during the irrigation season of 1906 and did not complete the canal sufficiently for the delivery of the water for beneficial use upon all of said land during any sufficient portion of the irrigation season of 1907.
But water rights were sold to persons living upon the land to be irrigated by plaintiff in 1905, from which it would have derived the consideration in the way of profits contemplated by the contract if defendants had fulfilled their obligations. The demurrer admits all of the facts well pleaded.
*291 It is argued by defendants that in the matter of the sale to the Eawhide Ranch Co. of water rights for delivery from the canal for beneficial use upon, and the irrigation of, the' lands lying along and in the vicinity of the canal and subject to irrigation, “what an acre of land will yield is not entirely contingent upon the receipt of water, but depends a great deal upon the farmer, not only in the manner and way of farming, but in the manner and way the water is distributed to the land under cultivation.” From this it is argued that the damages, if any, sustained by the ranch company were speculative at best and too remote from the contract to be chargeable to the Government.
The failure on the part of the defendants to supply the water during the' time stipulated made plaintiff responsible to those to whom it had sold water rights, resulting in the water-right purchaser sustaining injury to the growing crop. Such injury arose out of the failure of the defendants to keep their contract. The authorities amply sustain the proposition that damages for injuries to growing crops directly due to breach of contract to deliver water for irrigation may be recovered. These authorities are collated in Smith v. Hicks, 19 L. R. A., 938, and from an examination of them we find that the rule followed in irrigation communities is the difference between the amount realized from the crops and the amount that would have been realized had water been furnished, less cost of raising, harvesting, and marketing. There is necessarily more or less uncertainty as to the measure of damages in all such cases, and on the merits this phase of the matter must be considered. Certainly actual damages properly proven are recoverable.
It is argued by defendants that the entire petition sets forth an action sounding in tort and that there is want of jurisdiction. This defense will now be considered.
The rule that the duty to pay damages for a tort does not imply a promise to pay them upon which assumpsit may be maintained has been recognized by the Supreme Court upon the authority of Goober v. Cooper, 147 Mass., 373. That a party may in some eases waive a tort by forbearing to sue for the tortious act and yet sue in contract has also *292 been recognized by the Supreme Court where the matter out of which the claim arises has in it the elements both of contract and tort. Bigby v. United States, 188 U. S., 400. It is true that there are cases sounding in tort where courts have held that the device of waiving the tort can not make a case of implied contract, of which the Bigby case is an example. The first and second principal counts in the petition in the present matter, however, disclose an element of contract which can not be ignored because the 'failure of the defendants to supply the water springs directly from that phase’ of the contract upon which plaintiff not only had a right to depend but actually did rely.
We make out of a confused and very inartificially drawn petition a third count. Plaintiffs describe certain land as being subject to irrigation from the canal under the provisions of its permit, which land they allege was damaged by, through, and because of the washing, cutting, and wasting of said land by a large volume of water flowing over and upon the land from the canal which is alleged to have been caused by the willful and negligent acts of the officers and agents of the United States. Though it is alleged that the immediate and direct effect of the acts of these officers was that a considerable portion of said land was ruined and rendered valueless, there is no allegation that the ruined land was “ taken ” for public use, nor that the defendants derived any benefit from the tortious acts of their officers. On these allegations the court can not imply a contract especially where the defendants received no benefit. If this be so the court does not see its way clear now to hold that the plaintiff may recover damages for breach of contract in not supplying water as they, the defendants, had agreed to do when it appears that the loss was caused by a purchaser not wanting the water because his land had been ruined by the tortious acts of third persons, for whose tortious acts the Government is not liable.
The express contract was not for the sale and delivery of water but merely to enlarge an existing canal and in order that both parties should in future have a joint interest therein and be the several owners of the water. The con *293 tract did not require the defendants to guarantee the plaintiff against the acts of third persons. The loss set forth in what we may term the third count was a mutual loss caused by the wrongful acts of third persons and it is reasonable to say that each party must bear its own loss, and if either be entitled to redress it must be against the wrongdoers. Had the land not been ruined, non constat, the owners would have wanted the water when it could have been furnished to them and the plaintiff would have suffered no loss.
There is much to say on this branch of the case, but for the present we will be content to add that where a plaintiff sues on an express contract he must stand upon it.
Without further comment, leave is given to the plaintiff to amend its petition in this behalf within 60 days.
As to the first and second principal counts the demurrer of defendants is overruled, with leave to answer the entire petition within 90 days.