## SCHWAB v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. February 9, 1927.)

### No. 3835.

1. **Internal revenue** ⊂⊃38(6)—**Under Tucker Act, action against United States to recover taxes assessed against retail liquor dealer is maintainable (Tucker Act, 24 Stat. 505, as amended by 36 Stat. 1091, par. 20, § 24, 42 Stat. 311; Comp. St. § 5965).**

Under Tucker Act, 24 Stat. 505, as amended by 36 Stat. 1091, par. 20, § 24, and 42 Stat. 311, an action against the United States to recover taxes improperly levied and assessed against retail liquor dealer under Rev St. § 3242 (Comp. St. § 5965), may be maintained; the language "if the collector of internal revenue is dead" being used to modify only "even if the claim exceeds $10,000."

2. **United States** ⊂⊃125(1)—**United States can be sued only with its consent evidenced by congressional enactment.**

Actions against the United States cannot be maintained except on its consent, which must be evidenced by congressional enactment.

3. **United States** ⊂⊃127—**Congress may impose such restrictions on right to sue the United States as it deems necessary.**

Since government may refuse permission to be sued, it may impose such restrictions on the right to sue it as Congress deems necessary.

4. **Evidence** ⊂⊃11—**Courts judicially know that revenue acts passed during and after war resulted in claims against United States which could not all be heard in Court of Claims.**

Courts take judicial notice of the fact that the various federal revenue acts passed during and immediately after the war gave rise to a multitude of claims against United States which could not all be properly heard in the Court of Claims.

5. **Internal revenue** ⊂⊃2(16)—**Statute imposing tax on retail dealers held repealed by Prohibition Act and not ground for tax on dealer in 1920 (Comp. St. § 5965; National Prohibition Act, tit. 2, § 35 [Comp. St. § 10138½v]).**

Rev. St. § 3242 (Comp. St. § 5965), imposing tax on retail liquor dealers, was repealed by National Prohibition Act, tit. 2, § 35 (Comp. St. § 10138½v), and was not ground for tax on retail dealer in 1920, not having been reenacted until Act Nov. 23, 1921, 42 Stat. 222.

In Error to the District Court of the United States for the Eastern District of Illinois.

Action by James Schwab against the United States of America. The judgment granted plaintiff part only of the recovery sought, and he brings error. Reversed, with directions for new trial.

McCawley Baird, of East St. Louis, Ill., for plaintiff in error.

Harold S. Baker, of East St. Louis, Ill., for the United States.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Plaintiff brought this action to recover sums paid under protest as special taxes and penalties levied and assessed against him. They were assessed by the internal revenue collector because in 1920 plaintiff carried on the business of a retail liquor dealer, without having paid the specified tax provided therefor by section 3242, R. S. (Comp. St. § 5965).

Prior to the commencement of this action, plaintiff sought and secured a refund of a part of the sums thus paid. The District Court ordered a further refund, but disallowed the balance of the claim. To review this disallowance, he prosecutes this writ of error.

Two questions are raised—one by plaintiff and the other by the government—the answers to which dispose of the case.

[1] The government contends that this action is not maintainable against the United States; that if plaintiff has any action, it is against one Pickering, the collector of revenue who made the levies and the collections. Its reliance is upon the Tucker Act as amended. Paragraph 20, § 24, 36 Stat. 1091, amending the original (Tucker) act, 24 Stat. 505 (Comp. St. § 991), and the amendment of 1921, so far as they are relevant, are herewith reproduced:

"Sec. 24. The District Courts shall have original jurisdiction as follows: * * * Twentieth. Concurrent with the Court of Claims, of all claims not exceeding ten thousand dollars founded upon the Constitution of the United States or any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable, and of all set-offs, counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the government of the United States against any claimant against the government in said court: Provided, however, * * * all suits brought and tried under the provisions of this paragraph shall be tried by the court without a jury."

"Sec. 1310 (c), 42 Stat. 311. Paragraph twentieth of section 24 of the Judicial Code is amended by adding at the end thereof the

following new paragraph: 'Concurrent with the Court of Claims, of any suit or proceeding, commenced after the passage of the Revenue Act of 1921, for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected, under the internal revenue laws, even if the claim exceeds $10,000, if the collector of internal revenue by whom such tax, penalty, or sum was collected is dead at the time of such suit or proceeding is commenced.'"

Government counsel contend that the last clause of the amendment ("if the collector of internal revenue," etc.) modifies the original as well as the amended act. In other words, it is urged that suit against the government may be brought only when the internal revenue collector by whom the tax was collected is dead, and inasmuch as it is not alleged or shown that said collector is dead, the action will not lie.

Plaintiff concedes that his action will not lie if this construction of the amendment to the Tucker Act is correct.

Some of the basic legal questions involved are well settled. For example:

[2, 3] Actions against the United States cannot be maintained except upon its consent, which consent must be evidenced by congressional enactment. Cunningham v. Macon & Brunswick R. R. Co., 109 U. S. 446, 3 S. Ct. 292, 609, 27 L. Ed. 992; Bigby v. United States, 188 U. S. 400, 23 S. Ct. 468, 47 L. Ed. 519. Inasmuch as the government may refuse permission to be sued altogether, it necessarily follows that the Congress may impose such restrictions upon the right to bring these actions as it, in its wisdom, deems necessary. Treat v. Farmers' Loan & Trust Co. (C. C. A.) 185 F. 760.

It is obvious from the mere passage of this act that Congress was lifting the ban which before its passage prevented these claimants from suing the United States in the District Court. To state it differently, Congress enlarged the jurisdiction of the District Court so as to include suits on certain claims against the United States. In short, certain claimants were given the option to sue either in the District Court or to file their claims in the Court of Claims.

But not all claimants were given this option. In the first place, only those whose claims did not exceed $10,000 could bring their suits in the United States District Court. Likewise, only the holders of the claims particularly and specially defined by the act could thus sue in the United States District Court. Claims for the recovery of taxes and penalties improperly levied and collected by the internal revenue collector were among these included. United States v. Hvoslef, 237 U. S. 1, 35 S. Ct. 459, 59 L. Ed. 813, Ann. Cas. 1916A, 286.

It was upon this well-recognized state of the law that the Congress saw fit to amend this so-called Tucker Act, November 23, 1921. What was the purpose of the amendment? Did the Congress intend to limit or to enlarge the jurisdiction of the District Court? What had transpired, of which the court might take judicial notice, that would throw light upon this question?

[4] Between the date of the original Act, March 3, 1887, and the amendment, November 23, 1921, the federal Internal Revenue Tax Laws and the World War had both very largely increased the number of claims of the taxpayers and the citizens of the United States. This court takes judicial notice of the fact that the various revenue acts passed during and immediately after the war gave rise to a multitude of claims, which could not all be promptly heard in the Court of Claims.

The obstacles which confronted the taxpayer who had paid an excessive tax or a penalty and sought to recover the excess were numerous. And they were multiplied when the internal revenue collector who had collected the tax or penalty died before the suit was brought. These facts are significant, it seems to us, on the question of intent. For they supply the background from which it is fairly inferable that Congress merely intended to enlarge the jurisdiction of the District Court so as to permit claimants to bring suits directly in the District Court when they had paid an excessive tax or penalty. It was therefore provided, in case the collector was dead,[1] that these claims might be prosecuted in the District Court, regardless of the amount involved.

The original title to the amended bill confirms this conclusion. It read: "A bill to enlarge the jurisdiction of the District Courts of the United States in suits against the United States."

This construction accounts for the language, otherwise unexplainable, "even if the claim exceeds ten thousand dollars," appearing in the amendment; for if it was not intended to enlarge the jurisdiction of the Dis-

---

[1] Amended Feb. 24, 1925 (43 Stat. 972), to read "out of office."

trict Court, there would have been no occasion to insert this clause. In other words, such a claimant as was described in the amendment could have brought suit in the District Court under the original act, providing his claim was less than $10,000. If the government's theory were adopted, and the death of the internal revenue collector was a condition precedent to the maintenance of any suit in the District Court, it would have been unnecessary to have inserted the words, "even if the claim exceeds ten thousand dollars."

We conclude, then, that the clause "if the collector of internal revenue is dead" modifies "even if the claim exceeds ten thousand dollars," but does not limit or modify the original paragraph "Twentieth."

In summary: A claimant who has paid the alleged excessive tax or penalty may bring suit to recover the excess payment in the District Court, if (a) his claim be not in excess of $10,000; and (b) "even if the claim exceeds ten thousand dollars," if the collector who collected the tax is dead.

[5] The only other question goes to the foundation of plaintiff's claim. He contends that the act which assessed the tax and the penalty which he paid under protest was repealed by section 35 of the National Prohibition Act (Comp. St. § 10138½v). His reliance for this position is on United States v. Yuginovich, 256 U. S. 460, 41 S. Ct. 551, 65 L. Ed. 1043; United States v. Stafoff, 260 U. S. 477, 43 S. Ct. 197, 67 L. Ed. 358.

The Yuginovich Case must be our authoritative precedent. The Stafoff Case in no way modifies it, though it may explain and further apply it. From these two decisions it is apparent that there was a period from January 29, 1919, to November 23, 1921, during which certain sections of the old Internal Revenue Act were repealed. They were re-enacted by the so-called act supplemental to the National Prohibition Act, passed November 23, 1921 (42 Stat. 222).

In the Stafoff Case, the court says: "The decision in United States v. Yuginovich must stand for the law before November 23, 1921. * * * For offenses committed after the new law [reference being made to the National Prohibition Act, passed November 23, 1921], United States v. Yuginovich cannot be relied upon."

The tax and penalty collected from the plaintiff were levied because of plaintiff's failure to pay a retail liquor dealer's license when in 1920 he was engaged in the business of a retail liquor dealer. The question before us is, therefore, narrowed to this, Was the section of the Internal Revenue Act imposing a tax and a penalty for conducting the business of a retail liquor dealer repealed by section 35 of the National Prohibition Act?

Upon the authority of the Yuginovich Case and the Stafoff decisions, supra, supplemented by Farley v. United States (C. C. A.) 269 F. 721; Ketchum v. United States (C. C. A.) 270 F. 416; Reed v. Thurmond (C. C. A.) 269 F. 252; Ravitz v. Hamilton (D. C.) 272 F. 721; Sanford v. United States (C. C. A.) 274 F. 369; Bailey v. United States (C. C. A.) 276 F. 27; United States v. 2,000 Cases of Whisky, etc. (C. C. A.) 277 F. 410; United States v. Remus (D. C.) 283 F. 685; Gray v. United States (C. C. A.) 276 F. 395—we answer this query in the affirmative.

The judgment is reversed, with directions to grant a new trial.